Whenever you're ready, Mr. Good morning. Thank you. May it please the court. My name is Richard. I represent the Robert defreitas and I would like to reserve 3 minutes for rebuttal. Okay, as I'm sure the court is well aware, reading the briefs, this case involves 2 convictions are grounded in. An allegation of violation of the Virgin Islands Code, Title 14, Section 403, Mr. Mr. Delaferra, could I ask you just because I think it might be an orderly way to proceed here if we could begin with your request for certification, because clearly, if we were to decide to certify, then we don't have to go on to resolve the merits here. The official act issue is inextricably intertwined, however, with any determination or any discussion, I should say, of the certification question. So, you have asked us to consider certifying the question to the Supreme Court of the Virgin Islands. Why does the Supreme Court of the Virgin Islands sit in a better posture or a more appropriate posture to determine the question of official act here than do we, especially in view of the fact that it is the federal court system and in particular, the highest court in the land, the Supreme Court, that has held forth specifically and most recently on the contours, if you will, of what an official act is? Well, Judge, what I argued, obviously, was in the alternative that this court is in a position to determine whether the statute is void for vagueness in light of McDonald, in light of the 201, Section 201 under the United States Code, and the precedent of FIERA, which I submit is a different type of statute. But of course, while there is some dictum and arguably important dictum in McDonald on the issue of official act, the Supreme Court did not hold that that particular statute or the term official act was void for vagueness there, correct? That's true. And that's because the statute, Section 201, clearly delineates the elements, if you will, the elements that eventually appear in the jury instructions regarding question or controversy and specific elements. And the Virgin Islands statute just has none of that. It has no definition whatsoever. So it's markedly different than the bribery, the federal bribery statute, although they use the same phrase, official act. So I... The same phrase. It's the very same phrase, but it's undefined under the Virgin Islands Code, unlike the United States Code, where it's specifically defined. Well, and in fact, and in fact, official act and jurisprudence over official act actually has resonance and appears in the common law, doesn't it? If you taste it back far enough. Well, and I submit that Bergstahl does give some indication of that, that settled practice can be viewed in determining whether an official act, there was a duty to perform an official act. So what I'm getting, what I'm getting to is that there is nothing particular to this Virgin Islands statute that really provides any reason for why the Supreme Court of the Virgin Islands should give shape or definition to this term, as opposed to this court. Well, and certainly I've asked this court to review the statute under the void for vagueness doctrine. And I argued in the alternative that this court felt that this was something that was better left to the local Supreme Court to interpret its own statute, that the court could do that in the alternative. Let me ask something further here about certification procedure, because the Supreme Court of the Virgin Islands, of course, has a specific rule, Rule 38, that governs certification. When was the earliest time that certification could have been raised here by your side? Well, it could have been raised pre-trial. The request for certification could have been raised pre-trial. All right. And certainly both sides here knew that whatever the meaning or shape of official act was, was going to be an issue during trial, right? It would appear from the record, yes. From a policy standpoint, isn't the fact that the parties proceeded, not simply you, but also the government, that the parties proceeded with knowledge, presumably, that official act was going to be, if not central, a very important issue here as to one of the statutes, that you could and should have raised it, and now you are raising it only after you have failed to prevail at trial. Isn't that a factor, perhaps not a dispositive factor, but a factor that this court should take into account as we go through, in every case, a certification determination? Well, as I conceded, the issue could have been raised pre-trial. It was raised after the conviction. Understood. Actually, I should have been a little bit more refined in my question. Do you agree that as a matter of legal policy and of case administration, that it is a permissible consideration for this court and probably a consideration we ought to take into account as to whether or not a party has sought certification at the earliest available time as opposed to at a point when the party has actually lost either on the issue or to some extent as a consequence of the resolution of the issue? Well, I can understand why the court is concerned in the timing of the request for certification. I fully appreciate that. But I don't see anything in either this court's rules or in the Supreme Court of the Virgin Islands' rules that puts a bar on the timing, as to the timing of raising the request for certification. Understood. I don't want to monopolize the question. The question might be a bar, but as a practical matter, it's certain that it would be something we should consider. The fact that you're going to try to lose and say, oh, by the way, folks, we need to let the Virgin Islands Supreme Court answer this question. Is that something that should be considered? Well, I would say this, that the request for certification was made post-trial during the period of time that a motion for trial or judgment of acquittal was permitted under the rules of. Well, but that's but that's well after a jury's been instructed, right? Well, I agree. I agree. But but I'm I'm saying that the district court had an opportunity. It wasn't just left to the appellate court to certify that the district court had an opportunity to consider it and chose not to. So I think that in that in that respect, maybe we're in a little bit of a different posture than just simply it's raised for the first time on appeal. But, you know, going to the policy of why, you know, it's in it's important. And I think the rules recognize this and the case law recognizes this is we're talking about a Virgin Islands law that the Supreme Court of the highest the highest court in the territory has not had an opportunity to opine upon. I understand that. But let me take this one step further. Would it make any sense for the Virgin Islands or any state, for that matter, to define the very short term official act in a manner different from the way it has been defined under a federal statute? I don't I can't imagine that the Supreme Court of the Virgin Islands would do something that was certainly contrary to established federal law. You haven't argued in your briefing on either certification or an official act, have you? That official act has some meaning other than what it has for purposes of the federal bribery statute. Well, I well, I guess I guess what I'm asking this this court to do is because the because the term official act is not defined in in the Virgin Islands case law or within the statute that the section to a one and the case law interpreting to a one. Well, you've got Stephen's testimony about what she did over the course of 60 years. That combined with the case Birdsall. Isn't that enough? There's another argument whether the jury should have been instructed on this. I get that. But forgetting that for a second, isn't that enough for us to determine what's an official act? Well, I don't think that that doesn't determine what an official act is. I think the argument that I'm presenting is, is that assuming for the sake of argument that there is a duty to report. Well, let me put it this way, whether is there a duty for a Virgin Islands licensing officer to report violations of federal immigration law to his superior? The argument I'm making is that Stephen's testimony. I've made two arguments, one that is that sufficient foundation for that to come in. But even just look at what she said. I don't think that definitively shows that there was an official duty on the part of Mr. De Freitas. She really testified rather briefly, if I'm correct, to something of a practice, didn't she? And I'd be interested to hear from the government about this. But she didn't testify to official office or department policy, did she? Well, it appeared not. And as your honor points out, the testimony that was elicited by the government with regard to that was very brief. It was almost as if she was testifying in somewhat of a narrative fashion. She was not really directed to provide that testimony. And the verbiage that she used was somewhat vague. And if I can just inject the personal knowledge argument that I've made, even though she testified she was a six-year employee of the agency, she was basically charged with processing applications and accompanying these enforcement officers. So there was no foundational testimony for how she was aware of the practice, if it is indeed a practice. She's certainly not an enforcement officer. She's not a supervisor to whom this alleged violation would be reported. And then another thing that I point out in my insufficient evidence argument is there was really nothing in the testimony of the alleged victim or Ms. Herrera that it was communicated to Mr. De Freitas that she was in violation of federal immigration law. She talked about how she thought he was looking for her health care card, that he asked for her passport, but she refused to give it. Yeah, that's very different. They're getting insufficiency now, but to me there's enough on the record to support the jury's verdict on that. She talked about coming from, she's Dominican. She came from Tortola, came through Tortola. She used the term official papers, and you can argue, well, that doesn't necessarily mean immigration. It might mean something else. But given the deference we have to give to a jury verdict, there's enough there, isn't there? It seems to me a much stronger argument is that the jury was never asked to, was never instructed on the meaning of official act. Well, and I would concede that, Your Honor, but I would point out that if you look at the testimony of Ms. Herrera, she told, she states that she told Mr. De Freitas she was Dominican. But all of that testimony about how she had gotten married, she had come through Tortola, not through a port of entry, she was telling the prosecutor that and telling the jury that. There was no evidence that she ever told Mr. De Freitas that. So I think that that's an important point to make. But she told De Freitas she shouldn't be working there, and she was only helping out because the normal employee was on vacation. But she wasn't, I'm not sure if she said papers or not, but looking at what I read in the piece, what she told De Freitas, it was pretty clear to me that if I were in De Freitas' position and I heard that, I would then notice the fact this person probably is not here legally. Well, what I would submit from the testimony is that it may have shown that she was not licensed to work as a pedicurist in a nail salon. I think that's right, but the reason she wasn't licensed was because she had no citizenship. She was here illegally. That's why she couldn't get a license. Well, I think there's more than that. Respectfully, Your Honor, going back to Ms. Stevens, they have to pass an examination and they have to apply for the license. So even though you might be qualified to do medicare and pedicures, if you're not licensed, you can't do it. So I think that the record doesn't really bear out specifically that Mr. De Freitas was aware of that she was in the United States illegally. Let me go back to Ms. Stevens' testimony, which, by the way, there was no objection to her testimony at trial, correct? Unfortunately, no. Right. So you can assume there's a 602 who was satisfied in terms of her personal knowledge. And she's asked, and she talks about specifically immigration. During the course of an inspection, what is generally done with possible immigration violations that may have occurred? They weren't talking about not having a license to do nails. They were talking about immigration violations. And then she says the enforcement officer would then have to make contact in order to have communication via report to his immediate supervisor. Then the supervisor would make contact with immigration. This was clearly about an immigration situation. If you couple that with the relevant statute as to what their responsibilities are, includes referrals to federal or territorial department or agency. How can that not be an official act? Well, first of all, even though Ms. Stevens is talking about her understanding of practice within the Department of Consumer Affairs and Licensing about exposed immigration violations, as I was explaining to Judge McKee, the testimony of Ms. Herrera did not demonstrate that she told Mr. DeFreitas that she was here illegally. So I'm looking at it from the perspective of what Mr. DeFreitas knew and if he had an obligation to report an immigration violation that he was not even made aware of. And as far as the statute... Was there ever any discussion or argument at the time of trial with respect to the statute that Judge Restrepo has just referred to? That is 3 Virgin Islands Code section 272 because he's quoted from subsection A8. And that subsection would, if given careful attention, could arguably suggest... At least I suggest it could arguably be read as still confining the responsibilities to those related to an agent or officer of the department. Depending upon how one reads that text in its entirety, the subsection A8 text in its entirety. The including language is what I'm referring to coming immediately on the heels of receiving and evaluating complaints and initiating their own investigations relating to these matters and take appropriate action. Was there any discussion at all? There wasn't, Judge Smith. And interestingly, if you look at the closing argument of the prosecutor, there was really no discussion about official act or duty of a licensing officer at all. Well, neither side provided the court with suggested definitions of official act, did they? Unfortunately, neither side requested jury instructions that would have specifically defined official act. Any limiting principles at all, say pursuant to McDonald? No, none at all. And which is, you know, considering that this court has a very specific jury instruction that I cited in my brief concerning the bribery and official act and definition of official act. But I would like to also point out, as I pointed out in my reply brief, because the government had brought up this statute, Title III, Virgin Islands Code 272.8, that the referral to a federal agency relates to all laws relating to the advertising, offering for sale, and the sale of commodities, goods, wares, and services. That's what I was just asking you about. You have to read the entire subject section because the including language would seem to relate back to that which is the specific charge to the department and its officers, arguably anyway. Let me ask you one additional point here because you have argued sufficiency, correct? I have. And do we view, are we reviewing the sufficiency issue here under plan error? Well, there are two aspects of the sufficiency that were not raised below. And that's whether official act requires a formal exercise of governmental power, basically the McDonald issue, and whether there was no pending... Well, let me get to my bottom line because that's answering what really was not my specific question. But under Olano, don't you have an easier time attacking what happened here with respect to sufficiency than you would in attacking a failure to request or have instructions given? Isn't the latter a higher hurdle for you under plan error to cross? Well, I mean, I'm reluctant to completely agree with that only because the instruction that I submitted should have been given does allow the jury to consider that not every action taken by a public official qualifies as an official act. So it would seem to me that if the jury had been instructed on that, that there's a reasonable probability that the outcome would have been different. So I think both issues are reversible. I think both issues are plain error. Thank you, Mr. Leffer. I think we reserve some time for rebuttal. Mr. Sleeper. Good morning again, Your Honor. Adam Sleeper for the United States. If I could begin, there's a correction that I wanted to make, and then I would touch briefly on certification before getting into the merits. On page 30 of our brief, we had indicated that the defendant, the only one theory was presented at trial, that the defendant sought sexual favors in exchange for not reporting the victim's immigration status to a supervisor. Our arguments were tied solely to the immigration violation, but I think the argument that for not reporting immigration to a supervisor versus immigration generally, our arguments at trial certainly encompass that theory as well. Mr. Sleeper, could I just ask you a question, a kind of a historical question here for context purposes? The government filed three charges, or there were three charges filed against Mr. De Freitas, correct? Yes, Your Honor. All three went to a jury, and the jury convicted on only two of them, and interestingly, they found Mr. De Freitas not guilty on the section 403 charge. Am I right? Correct, Your Honor. They found him not guilty on the blackmail charge. The blackmail charge. Would you agree with me that blackmail was probably a better fit, both legally and factually here, to what occurred? The official act, of course, does still appear in the statute, but doesn't it seem to address what occurred here? I'm sorry. I think I misspoke. Was it 873? 873 was the not guilty charge, right? The blackmail charge. Yes, Your Honor. It would count to the blackmail charge. I apologize for giving the wrong section, but I'm asking this question because the language is under a threat of informing or as a consideration for not informing, which is what would seem to have occurred here, and for whatever reason, the jury came back not guilty on that one, but guilty on the 403 charge. Well, Your Honor, I think that's probably better explained by the arguments by defense counsel in his closing. With respect to count two, he argued to the jury with no indication that the defendant was threatening himself to go to immigration, and he made that argument at closing only to blackmail charge, and that can be found at Supplemental Appendix 199 and Supplemental Appendix 207. I realize the government called the colleague of Mr. De Freitas to testify. I don't believe Mr. De Freitas really put on any defense, at least evidentially. Is that correct? That's correct, Your Honor. So, I mean, did the government proceed here on a theory that there was some kind of custom or practice to report or refer? Your Honor, was that express theory enunciated anywhere? I don't believe it was, but is that theory supported by the evidence for sufficiency of the evidence analysis? It is, and it would be our view in light of the acquittal on count two. Well, how would the jury figure that out if it wasn't argued that way? I mean, even if, especially when at least by my lights in reading 3VIC Section 272, it's not clear to me that there's a statutory duty to do so, to report or refer. Well, Your Honor, I think it turns on the scope of review here, which is plain error, as I believe the defense counsel has acknowledged. If we were ourselves trying to show that there had been no prejudice from the omission of an instruction, we would be in a much more difficult situation. But here, we can look to the acquittal on count two and the arguments that were made on count two to determine what the jury was thinking, and the arguments were regarding immigration. And there were two potential arguments involving immigration encompassed in the evidence. One is that he violated this in some way by blackmailing her in order to not make a direct report. Okay, what was your theory of official act as to the prosecution under and the conviction of Section 403? What was the official act? Your Honor, I don't think that a theory, if you're asking me what theory was argued to the jury, I can't say that there was a discussion of immigration. Well, my gracious, we don't even have a jury instruction to them on what an official act is, and nobody argued what it was either? What's a lay jury supposed to do? This is a term of art that has given the Supreme Court of the United States great difficulty. But at least the Supreme Court has provided some guidance, has provided some bounds, has provided some specifics, even arguably some dictum. And the court provided nothing, and apparently neither the prosecution nor the defense sought any instruction here. And is anything I've just said in what I admit was not really a question inaccurate? No, Your Honor, I couldn't disagree with anything that was said there. What about the way the statute is worded? 403, the Broadway statute, which is read to you, goes at doing or refusing to do anything and basically for a quid pro quo. 403 is not worded that way. It simply says for doing any official act. It doesn't say for doing any official act or for the promise to withhold any official action. That's what we have here. He wasn't saying that he was going to, he wasn't basically shaking her down in exchange for doing something. He was saying that he would refrain from doing something if she did him a central favor that he was trying to get. 403 does not include language that would include an omission. But aren't you asking us to amend the statute to put into the statute for doing any official act or for refraining from taking any official action? Your Honor, two responses to that. At first, it's the government's view that that issue isn't presented in this appeal. That was based in his brief. I looked at it, said his brief, and you never responded with your brief. It's in his brief. He raises it. So in a paragraph, he raised the issue. OK, your Honor. Well, I would also say that while that may be in a federal statute, but not a Virgin Islands statute. And while if we were construing federal statutes, we might view that absence as conspicuous. I think that looking at statutes across jurisdictions, that's not quite the same analysis. And I had no idea what you're saying. You're saying that the Virgin Islands legislature does not know how to draft a statute. The Congress does. No, your Honor, I'm saying that when you have a statutory scheme and Congress uses language in one part and in different language in a different part, that can be viewed as significant. What I'm saying is when you have the Virgin Islands drafting a statute and the United States drafting a statute, not the same sort of statutory scheme subject to that analysis. Well, where does the Virgin Islands and what instruments are following you? Are you saying that there are other statutes with the Virgin Islands? I guess you're saying that when the V.I. legislature drafts a an act like this, they never, ever include the omission as part of a criminal act. And then all they do is punish affirmative actions and not promises to refrain from taking official actions. No, your Honor, I I'm the point I was making, and this was more of an ancillary point. So I'll move on to the more direct point after is that because these statutes not being passed by the same sovereign, this isn't a statutory scheme. So the Virgin Islands. So the mere fact that the Virgin Islands legislature use different language than the United States did doesn't necessarily mean they intended something different. Now, I think the greater point is, you know, whether the affirmative act of doing something can also encompass not doing something. You know, presumably and admittedly, this is not in the record. The defendant would at some point need to file some some sort of report and whether or not. It was an affirmative act or you're right, it's not not in the record. All he has to do is nothing. Basically, if he just won, does no positive report says nothing. That's basically what he's saying. Look, you do me this sexual favor and I'm going to grab all my business. I won't turn you in. He didn't say that he would be filing any kind of any report. And if that's what the situation was, that could have been established to testimony of a supervisor or something of that sort in terms of what the course of business is and get it into the birds. None of that was done here. But you really are asking us to amend the statute. I'm not sure I would characterize it as amending it, but I think that it's a matter of intent. There's just no reason the Virgin Islands would have intended to only affect what might be viewed as affirmative versus affirmative act versus a failure to do something. But you're aware of the fact that we look at we get intent from what the legislature said in the statute. And all we have for us in terms of their intent is that their intent on penalizing someone who decides that they're going to extract in a monument, whatever that language is, in return, quote, for doing any official act, not for refusing or refraining to do an official act, but for doing any official act. Yes, I agree that that's what the statute says. I think that he is is making a decision to not pass along information. He's making an affirmative decision not to, whether that constitutes an official act. Well, so now you're really in shaky ground under all the cases. So you're saying the mental process of deciding not to do something becomes an official act. What's going on in his mind is an official act. Well, your honor, under the question we're looking to, is there a settled practice? So it's an analysis of what birds are helps you in terms of the immigration law is not an immigration officer, but the connection between the immigration laws and the consumer licensing folks. Bridges that gap. Bridges all doesn't bridge the gap in terms of what's an official act and whether or not failure to act is an action. Well, your honor, I think birds all talks to they're not needing to be birds all involves an inferior employee doing something that would not otherwise constitute an official act. Because of the custom and practice. And you've got that on this record was Stephen's testimony. There's enough there early enough, but there's enough there to sustain that inference. I would grant that you've got that in the birds. But that's a different issue. That just goes to the immigration problem. Yes, your honor. And the point I'm making is that while a decision on something like this may not constitute an ultimate official act. That doesn't mean that the decision on something like this cannot sort of fall into that intermediate process that that's considered in birds. All for purposes of whether it's affirmative or not. I could speak briefly on certification. The issue 1 of the issue with certification here, at least on the, the official question is that this just was not raised below. If the court were to certify this question, I certainly doubt the court would certify it. For plain error to the Virgin Islands Supreme Court. And if the court didn't certify it for plain error, then essentially certification would be being used as a workaround. Because any holding of law by the Supreme Court would then be plain in light of the certification. Let's get to what whatever your bottom line is. Are you saying that this is not really a good vehicle for certification? Yes, your honor. That's our view. We'd also note that the last question that the the void for vagueness question is a is a matter of federal law, not a matter of local law and not appropriately certified. And that the middle two questions are also for the reasons in our brief. Thank you, Mr. Yes, thank you. Because a point was made about the blackmail. Statute and the fact that there was a conviction and this may factor in, I think the government has has kind of made an argument that. Because there was an acquittal on one on one count, you can't find plain errors to the convictions on the other two counts going through the jury instructions. The court instructed the jury that in order for the in order for the defendant to be found guilty of blackmail. There's first that the defendant demanded money or another thing of value from the victim. Well, we know from any any fair reading of the testimony that he didn't demand money and other thing of value wasn't defined. I mean, that's that going back to what I consider to be the deficiencies in the jury instructions that none of these terms of art are defined for the jury. So they're, they're kind of left floating, you know, in the wind. And then we get to what I consider to be the prosecutorial misconduct in the closing argument, because there is no theory advanced as the court was questioning the government's attorney. There was no theory advanced as to, you know, what was the official act and whether it was settled practice, whether it was a statutory duty. Did the district court's instruction on 873 limit what was received explicitly and only to money? It did not track, it did not track the language of the statute, money, any money or other valuable thing. It did. As a matter of fact, I'm reading from the instruction at page 188 of the transcript. The court said first, the defendant demanded money or other thing of value. OK, money is obviously self-explanatory. Other thing of value is not. And I'm just pointing out that a lot of these terms of art, legal terms of art are not defined for this jury so that they're susceptible to the argument that was made by the prosecutor, which was, you know, Mr. The prejudicial tone of the closing argument was not related to anything dealing with the evidence and the relevant evidence to the elements of the of the of the charges. But was really just an overly prejudicial argument that I I submit was influenced the jury to improperly. And. So I think my time is up, unless the court has other questions, we don't. Thank you very, very much for taking better. I'm sorry. I'm just asking the court. OK, thank you.